UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Criminal Case No. 8:22-PO-397-AAQ |
| **MICHEAEL GEMMA** | * | |
| | * | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT**

On August 16, 2022, Defendant Michael Gemma appeared before the U.S. District Court for the District of Maryland for a bench trial on the charge of indecent or disorderly conduct. Although Defendant raises multiple arguments, the question before the Court is relatively straightforward: whether a defendant commits disorderly conduct by entering his former workplace and threatening his former co-worker.[1] For the reasons discussed below, I conclude that the United States has proved beyond a reasonable doubt that Mr. Gemma committed the offense charged in the citation.

**PROCEDURAL HISTORY**

On February 4, 2022, Michael W. Gemma was issued a citation for indecent or disorderly conduct in violation of 45 C.F.R. § 3.42(e). ECF No. 1. An initial appearance on the charge in the citation was set for February 15, 2022. ECF No. 2. On February 14, 2022, Mr. Gemma's counsel informed the Court that he had undertaken representation of Mr. Gemma and that Mr.

---

[1] Defendant emphasizes the ramifications from criminalizing what he characterizes as a private argument. ECF No. 13, at 15. His argument overlooks, among other things, that the conduct of which he is accused occurred on government property in the office of another individual where the Defendant no longer worked.

Gemma would waive his initial appearance. ECF No. 4. Trial in the matter was initially set for May 17, 2022. ECF No. 5. However, on May 20, 2022, trial was reset for August 16, 2022 before the undersigned. ECF No. 10, 11. On the day of the trial, Mr. Gemma raised a variety of legal arguments in support of a Judgment of Acquittal. The Court deferred ruling on the arguments, pending further briefing on the issues. On August 22, 2022, the United States presented a Memorandum of Law, reinforcing the arguments presented at trial, specifically regarding the legitimacy of the charge against Mr. Gemma. ECF No. 12. On August 31, 2022, Mr. Gemma filed his Response asserting that the charges against him were illegitimate. ECF No. 13.

## FINDINGS OF FACT

Having received all exhibits related to the case, as well as having heard testimony from all witnesses presented, I make the following findings of fact. On July 13, 2021, Michael W. Gemma was terminated from his position as a Senior Technical Specialist at the National Institute of Health (NIH). During his employment at NIH, Mr. Gemma was responsible for training Faris Abdul-Majeed, another NIH employee. The two developed, at a minimum, a professional, working relationship. After Mr. Gemma's termination, he sent, at a minimum, several dozen text messages to Mr. Majeed, demanding, among other things, an explanation as to why he was terminated. Mr. Majeed's supervisors at NIH instructed him not to have further communications with Mr. Gemma after his termination.

On July 21, 2021, at approximately 7:30 A.M. Eastern Standard Time, Mr. Gemma entered NIH. Although Mr. Gemma alleges that he sought to speak with a doctor on the campus regarding an internship for his son, he did not have an appointment with the doctor, and the doctor would not have arrived until 9:00 A.M. Upon entering NIH, Mr. Gemma considered getting breakfast

before visiting the doctor, but seeing long lines, decided instead to proceed towards Mr. Majeed's office on the second floor of the building.

Mr. Gemma found Mr. Majeed at his desk working. Although there is some dispute as to the initial tenor and tone of the conversation, at some point, Mr. Gemma demanded Mr. Majeed explain why he had not responded to his texts and other communications. Mr. Gemma then directed verbal profanity towards Mr. Majeed, blaming him for his termination. Additionally, at some point, Mr. Gemma made threats towards Mr. Majeed, including threatening physical violence toward one of Mr. Majeed's legs. Mr. Majeed has a physical disability affecting one of his lower extremities.

Hearing these threats, Mr. Majeed called NIH police. In response, Mr. Gemma departed the office and left the NIH campus. Shortly thereafter, police officials arrived and composed an incident report and conducted a follow-up investigation. According to both police officers, Mr. Majeed appeared "very upset" and scared of future contact with Mr. Gemma.

## APPLICABLE STANDARD

"Under the Constitution, an accused is protected from conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *United States v. Stavrakis*, No. ELH-19-00160, 2020 WL 607036, at *2 (D. Md. Feb. 7, 2020) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)); *see also United States v. Gaudin*, 515 U.S. 506, 522 (1995).

## CONCLUSIONS OF LAW

I.     **45 C.F.R. § 3.42(e) Prohibits Defendant's Conduct.**

3

Mr. Gemma initially argues that his conduct was not, in fact, illegal because the federal regulation cited in the citation references a provision of Maryland law which has been repealed and replaced by an updated state provision. ECF No. 13, at 5.

45 C.F.R. § 3.42(e) prohibits nuisances and disturbances on federal property, including:

> Unwarranted loitering, disorderly conduct (acting in a disorderly manner to the disturbance of the public peace is prohibited and shall be governed by Maryland Code Annotated, Article 27, section 122); littering or disposal of rubbish in an unauthorized manner, the creation of any hazard to persons or property; the throwing of articles of any kind from or at a building; the climbing upon any part of a building for other than an authorized purpose; the loud playing of radios or other similar devices; and rollerskating, skateboarding, sledding or similar activities, except in officially designated areas.

Although § 3.42(e) lists the prior version of the Maryland statute that was in place at the time the regulation was issued, § 3.2 of Title 45 makes clear that

> the matters described in this paragraph are governed, in whole or in part, by the current version of the cited Maryland criminal statutory provisions, which are made Federal criminal offenses under the Assimilative Crimes Act (18 U.S.C. 13). This listing sets forth areas of conduct particularly relevant to the enclave and is provided solely for the information of the public. The list is not all-inclusive and omission of other Maryland criminal statutes does not mean that such other statutes are not assimilated as Federal offenses under the Act. Generally, other Maryland criminal statutes will apply on the enclave, by force of the Act, unless superseded by Federal Law or a given provision of this part.

Among the matters described in the paragraph is "disturbance of the peace" – the charge which Mr. Gemma faces in this case. *Id.* Further, as the Fourth Circuit has held: "The Assimilated Crimes Act 'does not contemplate selective incorporation' of state criminal law." *U.S. v. Kelly*, 989 F.2d 162, 164 (4th Cir. 1993) (quoting *United States v. Robinson*, 495 F.2d 30, 33 (4th Cir. 1974)). *See also United States v. Patrick*, No. CRIM. 05–3950M, 2006 WL 83505, at *3 (D. Md.

Jan. 12, 2006) ("Section 16–303 of the Maryland Transportation Article is not specifically identified but nonetheless is assimilated as a federal offense under the ACA.").

Perhaps recognizing such, Mr. Gemma alternatively argues that the citation failed to provide him fair notice of the crime with which he is charged, given the fact that "Maryland has other disorderly type statutes. . . ." ECF No. 13, at 6.  First, the argument is inconsistent with his representation at trial.  Defendant made clear that he was "not making a pre-trial motion" under Federal Rule of Criminal Procedure 12(b), but rather arguing that the federal regulation was invalid and that the Court could take this into account when determining whether Defendant violated the statute.  Second, while Defendant is correct that the Maryland Annotated Code has other "disorderly type statutes," *id.*, each of these statutes clearly do not apply to the circumstances of this case.  *See* Md. Code Ann., Crim. Law § 10-202 (penalizing a person who keeps a disorderly house); Crim. Law § 10-203 (prohibiting interference with a commercial athletic event); Crim. Law § 10-204 (prohibiting a person from preventing another person from entering or leaving the medical facility); Crim. Law § 10-205 (prohibiting certain conduct during a funeral, burial, or memorial service).  Additionally, Defendant's arguments before trial commenced, based on Maryland courts' interpretation of Article 27, Section 122 which prohibits disturbance of the peace, evidence his understanding of the basis for his charge.  *See In re Nawrocki*, 289 A.2d 846, 849 (Md. App. 1972) ("Section 122 makes it a crime for any person to act 'in a disorderly manner to the disturbance of the public peace,' or 'wilfully (to) act in a disorderly manner by making loud and unseemly noises or by profanely cursing, swearing or using obscene language . . . on or about any public place . . . .'").  Third, upon questioning by the Court, Defendant opted to proceed with trial that day, rather than delay trial until the United States had provided additional information regarding the charge.

Finally, to the extent that Defendant complains that the citation failed to provide him fair notice of the charge against him, this is due, in significant part, to his failure to raise the issue in a timely manner with the Court, as well as the United States. On February 14, 2022, counsel entered an appearance on behalf of Defendant and waived Defendant's right to an initial appearance. On the same date, the Court entered a Scheduling Order which required that any defenses had to be asserted within forty days. On May 20, 2022, a bench trial was set in this case for August 16, 2022. Defendant did not ultimately raise the issue until the morning of trial, in contravention of the Scheduling Order. As noted above, although Defendant, on the day of trial, attempted to get around his failure to timely raise the issue by characterizing it as raising something other than an argument that should have been advanced in a motion to dismiss, in arguing in his post-trial briefing that he did not receive fair notice, Defendant essentially attempts to raise an argument which he admitted he had waived.

**II.      Defendant's Conduct Need Not Have Been in the Presence of a Third Party.**

Additionally, Defendant argues that his conduct did not violate Section 10-201 of the Maryland Annotated Code because under the terms of the statute the disturbance must have occurred in "public," and allegedly, unless a third party was present, the crime did not occur in "public." *See* ECF No. 13, at 7. Otherwise, from Defendant's perspective, application of the statute to his conduct would violate the First Amendment. ECF No. 13, at 14.

Under Maryland law, a person "may not willfully act in a disorderly manner that disturbs the public peace" and "may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." Md. Code Ann., Crim. Law § 10-201(c)(2)-(3). The Supreme Court of Maryland has characterized this offense as "the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of

6

people gathered in the same area[,]" or "conduct 'of such a nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.'" *Dennis v. State*, 674 A.2d 928, 930 (1996) (citations omitted) (reviewing state law on disorderly conduct), *vac'd on other grounds*, *Maryland v. Dennis*, 519 U.S. 802 (1996), *aff'd on remand*, 693 A.2d 1150 (Md. 1997).

Defendant argues that to commit disorderly conduct, he must not only have disturbed the individual to which his comments were directed, but also have disturbed a third party who was present. Otherwise, according to Defendant, his conduct did not occur "in public." None of the cases Defendant cites, however, establish this proposition. Furthermore, courts in Maryland have rejected this argument and found that individuals committed disorderly conduct in situations analogous to this case.

In *Diehl v. State*, 451 A.2d 115, 116 (Md. 1982), upon which Defendant primarily relies, ECF No. 13, at 10, the defendant challenged his conviction for disorderly conduct for yelling an obscenity at a police officer. The Supreme Court of Maryland vacated the defendant's conviction, noting among other things: 1) the language was directed towards a police officer, who is presumed to be less easily agitated, as opposed to a general member of the public, *id.* at 121; 2) the defendant was subject to an illegal arrest, *id.* at 123; and 3) the speech was an "emotional and emphatic" response in the moment, as opposed to an attempt to elicit a physical confrontation, *id.* at 122. While the court also considered the likelihood that the defendant's actions would have invoked a crowd to action, *id.* at 119, this consideration did not drive the Court's decision. *See also id.* at 122 ("where, as here, a person is acting in a lawful manner (a passenger getting out of a stopped car) and is the object of an unlawful police order, it is not usually a criminal violation for such person to verbally protest a police officer's insistence upon submission to such an order.").

Subsequent decisions from courts in Maryland have reinforced that whether a third party, other than the individual towards whom the comments were directed, is present is relevant, but of only secondary concern. For example, in *Briggs v. State*, 599 A.2d 1221, 1222-23 (Md. App. 1992), the Appellate Court of Maryland upheld a disorderly conduct conviction of a carnival goer who swore at other carnival goers and then swore at officers who responded to the disturbance he created. Like this Court, the court in *Briggs* assessed whether *Diehl* supported defendant's position. *Id.* at 1226. The court distinguished *Diehl* and explained the conclusion to be drawn from it: "We distinguish *Diehl* and the case at bar, however, by pointing out that the defendant in *Diehl* behaved lawfully. In the instant case, Briggs did not act in a lawful manner: the police officers had probable cause to arrest him for disorderly conduct." *Id. See also Rouse v. Florio*, No. GLR-17-3482, 2019 WL 4750419, at *4 (D. Md. Sept. 30, 2019) ("[S]ince *Diehl*, the Court of Appeals has limited its holding to self-help. . . . Here, Plaintiff Rouse was not protesting her own arrest . . . ."). Further, like the court in *Diehl*, the court in *Briggs* emphasized the importance of whether the language was directed at officers or civilians. *See* 599 A.2d at 1226 ("Because police officers are (theoretically) non-incitable, the content of Briggs's language at this point was insufficient to give the officers probable cause, even though Briggs was saying, "fuck you, cops" and "[f]uck you, motherfucking cops," and continued shouting obscenities as the officers escorted him from the carnival.").

Were this not enough, the Appellate Court of Maryland in *In re Nawrocki*, on which Defendant also relies, ECF No. 13, at 12, directly rejected the contention which Defendant advances.[2] On appeal, the court in *Nawrocki*, considered a defendant's challenge to his conviction

---

[2] At trial, Defendant emphasized language in *Nawrocki* stating that "[s]o a person standing on a county highway making loud and unseemly noises and profanely cursing and swearing would not be committing the crime . . . unless within the hearing of others passing by or along the highway."

8

for disorderly conduct based on statements he made to a detained individual, as well as the police officer escorting him. 289 A.2d at 852-53. The court explained that even though it was not the basis for the lower court's decision, it could have convicted the defendant based on the impact his words would have had on the person they were directed towards:

> It is clear that Nawrocki directed threats to the person the officer had in custody and that those threats were that he was going 'to work (the prisoner) over, and do him in and everything right down the line . . . was going to get even with him.' We feel the lower court could have decided on the evidence, spare as it was, that Nawrocki's words had a direct tendency to cause acts of violence by the prisoner, that is that they had the characteristic of plainly tending to excite the prisoner, inciting him to a breach of the peace.

*Id.* at 853-54.

Unsurprisingly, courts in Maryland have upheld convictions of defendants for conduct similar to that of which the Defendant is accused in this case. In *Polk v. State*, 835 A.2d 575, 576 (Md. 2003), the defendant, a former employee of a medical center, returned to the site to pick up her final paycheck.[3] The defendant asked a police officer whether he had her final payment. *Id.* at 577. After the officer stated that he had taken her check to the human resources office, the defendant began to swear at him while demanding her check. *Id*. Like the Defendant here, the defendant in *Polk* relied on *Diehl* on appeal. *Id.* at 580. The Supreme Court of Maryland rejected her argument, explaining that the *Diehl* holding "is only applicable when the prohibition against

---

289 A.2d at 849. The Court agrees that if a person was alone in a public space making loud and unseemly noises, their conduct could not be criminalized under the statute. However, Defendant here asks the Court to stretch this language to require the presence of a third person in addition to the person against whom the language is directed.

[3] The defendant in *Polk* had an even stronger argument given that she had a legitimate basis for being at the location where the criminal conduct occurred. Even were the Court to accept that Defendant had a basis for being on another part of the NIH campus, he had no legitimate reason to be in the office of his former co-worker.

'loud and unseemly noise' seeks to regulate the content of speech." *Id.* at 582 (emphasis omitted) (quoting *Eanes v. State*, 596 A.2d 604, 608 (Md. 1990)). Additionally, as in *Briggs*, the court emphasized that in *Diehl* the defendant was lawfully resisting arrest. *See id.* at 580 ("We reversed Diehl's conviction for disorderly conduct because Diehl never acted unlawfully."). Not finding these factors present in *Polk*, the court upheld the defendant's conviction. *Id.* at 587.

Without question, "[a] court must examine the context in which the words were uttered." *Briggs*, 599 A.2d at 1226. One of the relevant considerations is whether other individuals are present. However, no court has adopted the *per se* rule for which Defendant argues. Further, the context within which Defendant acted in this case does not support dismissal of the charge. First, the victim to whom Mr. Gemma's conduct and statements were directed testified that he felt agitated and threatened by the speech. Similarly, the officer composing the incident report, as well as the officer conducting the follow up interview, testified as to the impact Mr. Gemma's conduct and statements had on Mr. Majeed. Second, the impact of Mr. Gemma's conduct and statements was enhanced by the fact that they were directed at an individual in the context of a closed office space, as opposed to a parking lot. *Polk*, 385 A.2d at 586-87 ("The restriction on speech in *Eanes* was permissible under the First Amendment because [the defendant's] speech took place in a residential area, affecting a 'captive audience,' who we defined as 'unwilling listener[s] or viewer[s] who cannot readily escape from the undesired communication, or whose rights are such that [they] should not be required to do so.'" (second, third, and fourth alterations in original)). Third, unlike *Diehl*, even if Mr. Gemma had an appointment on the NIH campus on the morning of the incident, he had no legitimate reason to be in Mr. Majeed's office arguing with him. Accordingly, his statements were in opposite to the defendant in *Diehl* who spoke as a means of vindicating his rights. *See Hill v. State*, 20 A.3d 780, 785 (Md. 2011) ("Maryland has recognized

10

that 'one illegally arrested may use any reasonable means to effect his escape, even to the extent of using such force as is reasonably necessary.'" (emphasis omitted)).  Finally, fourth, as opposed to merely speaking in hyperbolic terms, Mr. Gemma made specific threats towards a specific part of Mr. Majeed's body, referencing a pre-existing disability that Mr. Majeed had.  *See Counterman v. Colorado*, 600 U.S. 66, 74 (2003) ("'True threats' of violence is another historically unprotected category of communications. . . . The 'true' in that term distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, "I am going to kill you for showing up late").").  Considering these factors together, extending *Diehl* to the circumstances of this case is inappropriate.

### III.    Defendant Need Not Have Acted with Specific Intent.

Finally, Defendant argues that he did not act willfully because he did not arrive on the NIH campus with the purpose of creating a public disturbance.  ECF No. 13, at 12.  As the Appellate Court of Maryland has made clear, this argument confuses the relevant question when determining whether a defendant's conduct was willful:

> Appellant is incorrect, however, that she had to act for the purpose of disturbing the public peace.  The effect of the actor's conduct need only be that the peace was disturbed. To include the requirement that she must have acted for the purpose of disturbing the peace would add an element not within the plain language of the statute.  In sum, the trial court erred in declining to instruct the jury that appellant's conduct had to be willful, but correctly declined to instruct that appellant had to act for the purpose of disturbing the public peace.

*Dziekonski v. State*, 732 A.2d 367, 372 (Md. App. 1999) (internal citation omitted).

11

## JUDGMENT

Accordingly, for the aforementioned reasons, the United States has proven beyond a reasonable doubt that the Defendant violated the prohibition in 45 C.F.R. § 3.42(e) on indecent and disorderly conduct. The Defendant shall appear for sentencing in this case.

So ordered.

Date: November 28, 2023

_____/s/_____
Ajmel A. Quereshi
U.S. Magistrate Judge